IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEA BLOTTIN | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-01905-M |
| | § | |
| MARY KAY, INC., | § | |
| | § | |
|    *Defendant*. | § | |

## **PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

TO THE HONORABLE JUDGE BARBARA M. G. LYNN:

    Plaintiff Lea Blottin respectfully requests that the Court adopt the following set of jury instructions.

 

Respectfully Submitted,

**SANFORDBETHUNE**

By: */s/ Brian P. Sanford*
BRIAN P. SANFORD
Texas Bar No. 17630700
DAVID B. NORRIS
Texas Bar No. 24060934

3610 SHIRE BLVD., STE. 206
RICHARDSON, TX 75082
PH:(972) 422-9777
FAX: (972) 422-9733

**ATTORNEYS FOR PLAINTIFF
LEA BLOTTIN**

## **CERTIFICATE OF SERVICE**

      On September 10, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

                                                           */s/ Brian P. Sanford*

**Proposed Instruction No. 1[1]**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

**Proposed Instruction No. 2**

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.[2]

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.[3]

There are two types of evidence you may consider. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires

---

[1] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.16 IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS

[2] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.18 CONSIDERATION OF THE EVIDENCE

[3] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.18 CONSIDERATION OF THE EVIDENCE

that you find the facts from a preponderance of all the evidence, both direct and circumstantial.[4]

Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.[5] The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else.[6]

**Proposed Instruction No. 3**[7]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

**Proposed Instruction No. 4**[8]

In this case, [a party] must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you

---

[4] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.18 CONSIDERATION OF THE EVIDENCE

[5] *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

[6] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 716-17 (1983).

[7] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.19 EXPERT WITNESSES

[8] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006): 2.20 BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN

may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of [a] claim by a preponderance of the evidence, you should find for the defendant as to that claim.

**Proposed Instruction No. 5**

**Charge: FMLA Interference**

In answering Question No.'s 1-2, you are instructed as follows:

Plaintiff claims she was entitled to be restored to her same position of employment, or to an equivalent position, upon her return from FMLA leave, but that Defendant failed to restore her to such a position.

Defendant denies Plaintiff's claims and contends that it would not have restored Plaintiff to her same or equivalent position regardless of the FMLA leave.

Under the Family and Medical Leave Act ("FMLA"), it is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.[9] FMLA rights include requesting or taking leave under the FMLA, having the employer maintain certain employment benefits during leave and, once leave is completed, being restored by the employer to the position of employment the employee held when leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other

---

[9] 29 U.S.C. § 2615(a)(1); see also 29 C.F.R. § 825.220(b) (making it unlawful interference, denial or restraint of FMLA rights for an employer to violate any FMLA statutory or regulatory provision).

terms and conditions of employment.[10]

Upon return from FMLA leave, Plaintiff was entitled to be restored to the position of employment she held when the leave commenced, or to an equivalent position. An "equivalent position" is one that is virtually identical to the position Plaintiff held at the time leave commenced, with equivalent employment benefits, pay, and other terms and conditions of employment.[11] Plaintiff was entitled to job restoration even if Plaintiff was replaced while on leave or her position was restructured to accommodate the leave.[12]

An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. Thus, Defendant was not required to restore Plaintiff to the same or equivalent position if Defendant proves that Plaintiff would not have held the same or equivalent position even if Plaintiff had not exercised her FMLA leave rights.[13]

To prevail on her FMLA interference claim, Plaintiff must prove by a preponderance of the evidence that:

1. Plaintiff sought to return to employment with Defendant following FMLA leave; and

2. Defendant failed to restore Plaintiff to the same position she held at the time FMLA leave commenced, or to an equivalent position.

---

[10] 29 U.S.C. § 2612(a)(1) (entitlement to leave); 29 U.S.C. § 2614(a)(1) (restoration to same or equivalent position); 29 U.S.C. § 2614(c)(1) (maintenance of group health plan benefits).

[11] 29 U.S.C. § 2614(a)(1). The regulations further define the term "equivalent position." 29 C.F.R. § 825.215(a)-(f).

[12] 29 C.F.R. § 825.214(a).

[13] 29 C.F.R. § 825.216. This paragraph should be omitted where the only submission involves the failure to maintain group health plan benefits.

In this case, it does not matter whether Defendant intended to violate the FMLA. If Defendant denied Plaintiff a right to which she was entitled under the FMLA, then Defendant is liable, and Plaintiff should prevail.[14]

If Plaintiff proves Defendant failed to restore her to the same or an equivalent employment position, Defendant may nevertheless succeed by proving by a preponderance of the evidence that Plaintiff's same job, or an equivalent one, would no longer have been available to her at the time job restoration was sought because of reasons unrelated to the leave.[15]

**Question No. 1:**

Did plaintiff prove by a preponderance of evidence that Defendant fail or refused to restore Plaintiff to her same or an equivalent job position upon Plaintiff's return from FMLA leave?

Answer "Yes" or "No": _____

**Question No. 2:**

Did Defendant prove by a preponderance of the evidence that Plaintiff's same job, or an equivalent one, would no longer have been available to her at the time job restoration was sought because of reasons unrelated to the leave?

Answer "Yes" or "No": _____

---

[14] *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 927 (5th Cir. 1999); *see also Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002) (plaintiff must have been harmed by violation).

[15] 29 C.F.R. § 825.216.

**Proposed Instruction No. 6 (with Questions)**

**Charge: FMLA Retaliation**

In answering Question No. 3, you are instructed as follows:

The FMLA makes it unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity.

Plaintiff claims that Defendant unlawfully retaliated against her because she engaged in FMLA-protected activity.

Defendant denies Plaintiff's claims and contends that it did not unlawfully retaliate against her.

To prevail on her FMLA retaliation claim, Plaintiff must prove by a preponderance of the evidence that:

1. She engaged in FMLA-protected activity;

2. Defendant took one or more materially adverse actions against Plaintiff; and

3. Defendant's adverse action was taken because Plaintiff engaged in FMLA-protected activity.

As to the first element, FMLA-protected activity includes, but is not limited to, requesting or taking leave, having the employer maintain certain employment benefits during leave, and, once leave is completed, seeking restoration to the position of employment Plaintiff held when leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  The parties do not dispute that Plaintiff took FMLA leave, a protected activity.

With respect to the second element, a material adverse action is one that from the

perspective of a reasonable person in the plaintiff's position, might well have dissuaded the person from exercising her rights under the FMLA.[16] The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.[17]

You may consider the following actions if proved by a preponderance of the evidence as material adverse actions: her demotion, her relocation to a smaller office, the loss of her laptop computer, her negative performance review, the denial of a bonus, and hostile work environment.

If you disbelieve the reason(s) Defendant has given for its decision, you may infer Defendant took an adverse employment action against Plaintiff because of her FMLA-protected activity.

You may not return a verdict for the Plaintiff just because you might disagree with Defendant's actions or believe them to be harsh or unreasonable, unless the actions were motivated by unlawful retaliation. Under the law, employers are entitled to make employment decisions for a good reason, for a bad reason, or for no reason at all, so long as the decision is not motivated by unlawful retaliation, which may include harsh or unreasonable actions.[18]

Plaintiff does not have to prove that retaliation is the sole reason for the adverse actions.[19]

---

[16] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69-70 (2006).

[17] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).

[18] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 581 n.13 (5th 2004).

[19] *Richardson v. Monitronics Intern, Inc.,* 434 F.3d 327, 333 (5th Cir. 2005).

**Question 3:**

Did Defendant retaliate against Plaintiff while she was employed because she took FMLA-protected leave?

Answer "Yes" or "No": _____

(In answering this question, you are instructed to only consider those acts that occurred after the demotion).

**Proposed Instruction No. 7 (with Questions)**

**Charge: 42 U.S. C § 1981 Retaliation**

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by 42 U.S.C. § 1981 ("§ 1981").

Plaintiff claims she was retaliated against for engaging in activity protected by § 1981.

Defendant denies Plaintiff's claims and contends that it took no materially adverse action against Plaintiff in retaliation for her complaints of race discrimination.

To prove unlawful retaliation, Plaintiff must prove by a preponderance of the evidence that Defendant took an adverse employment action against her because she engaged in protected activity.

Protected activity under Section 1981 includes opposing an employment practice that discriminates on the basis of race, making a charge of discrimination, or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing concerning discrimination

based on race § 1981.[20] If the claim is for opposing an employment practice, Plaintiff must prove that she had at least a reasonable belief that the practice was unlawful under § 1981.[21]

"Adverse employment action" is not confined to acts or harms that occur at the workplace. It covers those (and only those) employer actions that could well dissuade a reasonable worker from making or supporting a charge of discrimination.[22]

You may consider the following actions if proved by a preponderance of the evidence as material adverse actions: her demotion, her relocation to a smaller office, the loss of her laptop computer, her negative performance review, the denial of a bonus, and hostile work environment.

Plaintiff does not have to prove that unlawful retaliation was the sole reason Defendant acted as it did.[23]

If you disbelieve the reason(s) Defendant has given for its decision, you may infer Defendant subjected Plaintiff to a hostile work environment, or constructively discharged her because she engaged in protected activity.[24]

**Question No. 4:**

Did Defendant take materially adverse employment actions against Plaintiff because she reported race discrimination?

---

[20] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 520 (5th Cir. 2000); see also 42 U.S.C. § 2000e-3.

[21] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Committee Note: In many cases, the employee has opposed an employment practice that is unlawful under Title VII. In cases where the employee has opposed an employment practice that was not actually made unlawful by Title VII, the court should also instruct the jury that the employee's actions must be based on a reasonable, good faith belief that the practice opposed actually violated Title VII, even if he or she was ultimately mistaken. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001).

[22] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58-59 (2006).

[23] *Richardson v. Monitronics Intern, Inc.,* 434 F.3d 327, 333 (5th Cir. 2005).

[24] *Ratliff v. City of Gainesville*, 256 F.3d 355, 359-62 (5th Cir. 2001).

Answer "Yes" or "No": _____

### Proposed Instruction No. 7 (with Questions)

**Charge: Constructive Discharge**

ANSWER ONLY IF YOU:

(A) Answered "YES" to Question 1 and "NO" to Question 2;
-or-
(B) Answered "YES" to Question 3;
-or-
(C) Answered "YES" to Question 4.

In this case, Blottin's employment with MKI ended when she tendered her resignation. Plaintiff contends that she was "constructively discharged." If an employer makes an employee's working conditions so intolerable that the employee feels compelled to resign, then the employer has affected "constructive discharge."

Whether a resignation is considered a "constructive discharge" is to be determined from the perspective of a reasonable person, and not from the subjective view of the Plaintiff. In other words, the question is not whether Blottin personally felt that her working conditions were so intolerable that she was compelled to resign, but whether a reasonable employee in Plaintiff' situation would have felt that way. You may weigh many different factors in determining whether Plaintiff was constructively discharged, including but not limited to the following:

1. demotion;
2. reduction in compensation;
3. reduction in job responsibilities;
4. reassignment to menial or degrading work;

    5.      reassignment to work under a less experienced or less qualified supervisor;

    6.      Badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation;

    7.      offers of early retirement or continued employment on terms less favorable than the employee's former status.[25]

These factors may be considered singly or in combination.[26]

**Question No. 5:**

Did Defendant make Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign?

    Answer "Yes" or "No": _____

**Proposed Instruction No. 8 (with Questions)**

**Charge: Damages for FMLA**

    ANSWER ONLY IF YOU:

    (A) Answered "YES" to Question 1 and "NO" to Question 2;
    -or-
    (B) Answered "YES" to Question 3;

If you found that Defendant violated the FMLA by interfering, then you must determine whether Defendant has caused Plaintiff damages and, if so, you must determine the amount, if any, of those damages.

---

[25] *Hockman v. Westward Commc'ns, LLC*, 2004 SL 2980351, at *11 (5th Cir. Dec. 22, 2004) (*citing Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644 (5th Cir. 2004).

[26] *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.[27]

You should consider the following elements of damages, and no others: (1) any wages, salary, employment benefits, or other compensation denied or lost because of Defendant's violation of the FMLA from the time.

Wages, salary, and benefits include the amounts the evidence shows Plaintiff would have earned had she remained an employee of Defendant/been promoted, etc., and includes fringe benefits such as life and health insurance,[28] stock options, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Defendant proves by a preponderance of the evidence, Plaintiff received in the interim.[29]

Defendant asserts that Plaintiff failed to mitigate her damages.[30] To prevail on this defense, Defendant must show, by a preponderance of the evidence, that: (a) there were "substantially equivalent employment" positions available; (b) Plaintiff failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff's damages were

---

[27] *United States v. U.S. Steel*, 520 F.2d 1043, 1050 (5th Cir. 1975).

[28] A plaintiff may recover damages for lost insurance benefits only if the plaintiff shows he or she actually incurred these expenses by replacement of the lost insurance or occurrence of the insured risk. *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006).

[29] *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981).

[30] This instruction should be used only when Defendant asserts the affirmative defense that Plaintiff failed to mitigate his or her damages.

increased by her failure to take such reasonable actions.[31]

"Substantially equivalent employment" means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning.[32] The reasonableness of Plaintiff's diligence should be evaluated in light of the individual characteristics of Plaintiff and the job market.[33]

**Question No. 6:**

Answer in dollars and cents for the following items and none other:

Wages, salary, employment benefits, or other compensation denied or lost from January 7, 2008 to the date Plaintiff resigned from Mary Kay, Inc.

_____

ANSWER ONLY IF YOU:

Answered "YES" to Question 1, "NO" to Question 2, and "Yes" to Question 5;

**Question No. 7:**

Wages, salary, employment benefits, or other compensation denied or lost from the date Plaintiff resigned from Mary Kay, Inc, until trial:

_____

---

[31] *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 258 (5th Cir. 1999); *Floca v. Homecare Health Servs., Inc.*, 845 F.2d 108 (5th Cir. 1988); *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 906 (5th Cir.1975).

[32] *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982).

[33] *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1993 (5th Cir. 1999).

**Proposed Instruction No. 9 (with Questions)**

**Charge: § 1981 Damages**

ANSWER ONLY IF YOU:

Answered "YES" to Question 4.

If you found that Defendant violated § 1981, then you must determine whether Defendant has caused Plaintiff damages and, if so, you must determine the amount, if any, of those damages.

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.[34]

You should consider the following elements of damages, and no others: (1) economic loss, which includes back pay and benefits; (2) punitive damages, and (3) compensatory damages, which include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.[35]

Back pay and benefits include the amounts the evidence shows Plaintiff would have earned had she remained an employee of Defendant/been promoted, etc., and includes fringe benefits such as life and health insurance, stock options, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Defendant proves by a preponderance of the evidence, Plaintiff received in the interim.[36]

---

[34] *United States v. U.S. Steel*, 520 F.2d 1043, 1050 (5th Cir. 1975).

[35] Section 1981a also provides that a plaintiff may recover for "future pecuniary losses," which by definition does not include front pay. *Pollard v. E.I. DuPont de Numours & Co.*, 532 U.S. 843 (2001).

[36] *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981)

Defendant asserts that Plaintiff failed to mitigate her damages. To prevail on this defense, Defendant must show, by a preponderance of the evidence, that: (a) there were "substantially equivalent employment" positions available; (b) Plaintiff failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff's damages were increased by her failure to take such reasonable actions.[37]

"Substantially equivalent employment" means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning.[38] The reasonableness of Plaintiff's diligence should be evaluated in light of the individual characteristics of Plaintiff and the job market.[39]

There is no exact standard for determining compensatory damages. You are to determine an amount that will fairly compensate Plaintiff for any injury she has sustained.[40] Do not include as compensatory damages back pay or interest on back pay and/or benefits.

Punitive damages are those damages designed to punish a defendant and to deter a defendant and others from engaging in similar conduct in the future.[41]

In this case you may award punitive damages if Plaintiff proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act(s) or practice(s) was a managerial employee; (2) she engaged in the discriminatory act(s) or practice(s) while acting in

---

[37] *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 258 (5th Cir. 1999); *Floca v. Homecare Health Servs., Inc.*, 845 F.2d 108 (5th Cir. 1988); *Ballard v. El Dorado Tire Co.,* 512 F.2d 901, 906 (5th Cir. 1975).

[38] *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982).

[39] *Sellers v. Delgado Coll*. 902 F.2d 1189, 1993 (5th Cir. 1999).

[40] SEVENTH CIR. PATTERN JURY INSTR. 7.23.

[41] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.4 (5th Cir. 1999).

the scope of her employment; and (3) she acted with malice or reckless indifference to Plaintiff's federal protected right to be free from discrimination.[42]

If Plaintiff has proven these facts, then you may award punitive damages, unless Defendant proves by a preponderance of the evidence that the conduct was contrary to the employer's good faith efforts to prevent discrimination in the workplace.[43]

In determining whether Carla Joiner was "managerial employee" of Defendant, you should consider the type of authority Carla Joiner had over Plaintiff and whether Defendant delegated employment decisions to Carla Joiner.[44]

An action was in "reckless indifference" to Plaintiff's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law.[45] Plaintiff is not required to show egregious or outrageous discrimination to recover punitive damages. However, proof that Defendant engaged in intentional discrimination is not enough in itself to justify an award of punitive damages.[46]

In determining whether Defendant made "good faith efforts" to prevent discrimination in the workplace, you may consider things like whether it adopted anti-discrimination policies, whether it educated its employees on the federal anti-discrimination laws, how it responded to Plaintiff's complaint of discrimination, and how it responded to other complaints of

---

[42] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.4 (5th Cir. 1999).

[43] *Kostad v. Am. Dental Ass'n*, 527 U.S. 526, 545-46 (1999); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 281, 286 (5th Cir. 1999).

[44] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 285 (5th Cir. 1999); *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

[45] *Kostad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

[46] *Kostad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

discrimination.[47]


**Question No. 8:**

ANSWER ONLY IF YOU:

Answered "YES" to Question 4:

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for the damages, if any, you have found Defendant caused Plaintiff? Answer in dollars and cents for the following items and none other:

    Emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life from the time she returned from leave on January 7, 2008, to the time she resigned from Mary Kay, Inc.:

    _____

    Emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life from the time she resigned from Mary Kay, Inc.:

    _____

    Wages, salary, employment benefits, or other compensation denied or lost from January 7, 2008 to the date Plaintiff resigned from Mary Kay, Inc.:

    _____

---

[47] *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 72 (1986); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999).

**Question No. 9:**

    ANSWER ONLY IF YOU:

    Answered "YES" to Question 4 and "YES" to Question 5.

    What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for the damages, if any, you have found Defendant caused Plaintiff? Answer in dollars and cents for the following items and none other:

    Wages, salary, employment benefits, or other compensation denied or lost from the date Plaintiff resigned until trial:

    _____


    ANSWER ONLY IF YOU:

    Answered "YES' to Question 4:

    Based on the evidence presented, do you find that Plaintiff should be awarded punitive damages?

    Answer "Yes" or "No": _____

    **IF "YES,"** what sum of money should be assessed against Defendant as punitive damages?

    Answer in dollars and cents: _____